## No. 16,329.

### FOSTER ET AL. *v.* HOWELL.
(220 P. [2d] 717)

Decided June 5, 1950.   Rehearing denied July 10, 1950.

Messrs. MEANS & ISBILL, Mr. WILLARD S. SNYDER, for plaintiffs in error.

Messrs. DICKERSON, MORRISSEY & ZARLENGO, Mr. WILLIAM F. DWYER, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

DEFENDANT in error, as plaintiff, sued for and recovered judgment on a jury's verdict, for the sum of $4,220 for the unlawful taking and conversion of an automobile. Defendants specify error.

Prior to May 14, 1948, the National Underwriters Finance Corporation, one of the defendants, obtained judgments against George Kelly in the total approximate amount of $6,500 on which execution was issued June 30, 1948, and directed to defendant Charles Foster as sheriff of Arapahoe county, wherein the sheriff was to make the sum of the judgments from the property of George Kelly. Foster, as sheriff, levied upon and took a 1947 Cadillac into his possession in the vicinity

of the Colorado Gear Company on South Broadway. George Kelly was located there, seemed to be in possession of the automobile, made no objection to the seizure, and volunteered to drive the car to a garage for storage under the direction of the under-sheriff. The car bore the initials "G. K."

Immediately after the seizure, Harrie Howell, the plaintiff, called at the sheriff's office and made claim to the automobile. He stated that he had purchased the automobile from George Kelly, his son-in-law, on May 14, 1948. He sued all of the main defendants for damages in the sum of $7,000 for loss of the car and loss of gains and profits from the use thereof.

Plaintiff testified that he resided at No. 8 Crestmoor Drive; that he was the owner of the Cadillac sedan in question; introduced a certificate of title showing his ownership, also the certificate of license to the car bearing the same license number as was on the car at the time it was seized by the sheriff; that after purchasing the car from Kelly, he paid the sales tax to the City and County of Denver and introduced the receipt therefor, as well as a receipt for the license fee; that he paid Kelly $1,000 for the car, evidenced by an exhibit which is a check in that amount drawn by him payable to the order of George Kelly with Kelly's endorsement on the back thereof; that at the time he bought the car it was subject to a mortgage held by the Mountain States Bank in the sum of $1,878, which he paid, and evidenced same by a canceled check to the bank for that amount, and also the installment note signed by George Kelly and held by the bank bearing the endorsement on the back, "Pay to the order of Harrie E. Howell;" that there was a second mortgage on the car shown by an exhibit, the note which this secured was given by George Kelly to Virginia Mae Howell and endorsed over to plaintiff by her; that he acquired this note and others from his daughter because of her indebtedness and that of her husband, George Kelly, to him for monies that he had

paid out for them; these items are all evidenced by exhibits offered and admitted in evidence.

Plaintiff further testified that he bought the car in good faith; that he never got back any of the money evidenced by the checks; that he had not entered into the transaction with the Kellys to hinder or delay Kelly's creditors; that after purchasing the car, he took it into his possession and kept it at No. 8 Crestmoor Drive; and, that he permitted Kelly and his wife, plaintiff's daughter, to drive the car.

The testimony of an automobile dealer, familiar with the value of Cadillac automobiles, was offered and the witness stated the market value of the car involved to be between $5,000 and $5,200 as of July, 1948; that the N.A.D.A. book value was $3,850, plus $150 for hydramatic drive.

Defendants' witness Nancy Nappe, of the Motor Vehicle Department of the State of Colorado, identified certain exhibits as being the application for a title to the motor vehicle and license bureau showing that the signatures thereon were the signatures of George Kelly as agent of Harrie Howell, the plaintiff.

There is no reason to further detail the evidence since it appears therefrom that the defense relied upon, was that plaintiff had not taken immediate delivery and followed it by an actual and continued change of possession, as is required by section 14, chapter 71, Frauds and Perjuries, volume 3, '35 C.S.A.

There seems to be no question that after plaintiff acquired title to the automobile, that Kelly, the vendor and judgment debtor, and his wife had frequent use of the car. Plaintiff says this occasional use was with his permission. Plaintiffs in error specified fourteen points as grounds for reversal, which may be summarized as follows: That the sale of the automobile to plaintiff was void as a fraud in law; that the sale was fraud in fact; that the court erred in refusing to permit defendant to use plaintiff's deposition in argument on a motion for

directed verdict, and further refused to permit the deposition to be offered as evidence as a part of the defense in the case; that the jury was improperly instructed by the giving of instruction No. 7, and refusal to give four instructions tendered by defendant; and further, that the verdict was excessive.

It seems to be clearly established by the evidence that plaintiff paid a full and adequate consideration for the automobile, the time of payments and the amounts thereof, as shown by the exhibits, are not controverted by the defendants. It also is shown that there was a delivery of the automobile to the plaintiff and that it was followed by actual and continued change of possession, although the vendor was permitted the use thereof and the automobile was found in the possession of the vendor at the time of its seizure. The issues of there being a bona fide sale, delivery, and a continued change of possessions were questions of fact to be resolved by the jury if it was properly instructed.

Defendants had taken the deposition of plaintiff and were permitted to use it in an attempt to impeach the plaintiff. However, they attempted to use the deposition in connection with their argument for a directed verdict, and in addition thereto sought to use it as a part of their defense. In accordance with rule 26 (d) of our rules of civil procedure, the court properly refused defendants' request and there was no error on this specification.

Together with a statement of the case and the usual stock instructions on preponderance and credibility, the court gave the following instructions: "Instruction No. 3—You are instructed that the statutes of the State of Colorado provide, as follows: 'Every sale made by a vendor of goods and chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the things sold or assigned, shall

be presumed to be fraudulent and void, as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith, and this presumption shall be conclusive.'

"Instruction No. 4—You are instructed that a Sheriff is liable for the acts or omissions of his Deputies when acting officially or under color of office.

"Instruction No. 5—You are instructed that a Sheriff or Deputy, acting under an Execution and Fee Bill, directing him to levy and seize the property of one person, who, in fact, seizes property belonging to a third party, the Sheriff and his bondsman are liable to such third party for conversion.

"Instruction No. 6—You are instructed in case of transactions between relatives that the burden of proof is upon the parties to the transactions to clearly and satisfactorily establish that the transactions were honest and that there was no intent to defraud creditors.

"Instruction No. 7—You are instructed that an automobile in the physical custody of an agent with the permission of the owner is in law deemed to be in the possession of the owner.

"Instruction No. 8—You are instructed that if you find for the plaintiff in this case, the measure of his damages is the value of the automobile at the time that it was seized with interest at the legal rate from the time of conversion to the date of trial."

These instructions clearly state the law applicable to the facts in this case and, without setting out defendants' tendered instructions in full, we say that a study of the latter reveals that such parts thereof as may be proper are fully covered in those given by the court.

The controlling question here, under all the facts and circumstances of the case, seems to be whether or not there was an immediate delivery of the automobile, followed by an actual and continued change of possession. Instruction No. 3 above quoted, is the controlling statute

in such cases, being section 14, chapter 71, volume 3, '35 C.S.A.

■ ■ The jury resolved the question of delivery and possession in plaintiff's favor upon competent evidence, and we are not at liberty to disturb its verdict. The use of the automobile with plaintiff's permission, and the actual possession thereof connected with the permitted use as seems to be the case here, is sanctioned in law without a violation of the controlling statute. The automobile could have been loaned or hired to the vendor without rendering it subject to levy by the defendants herein. *Goad v. Wellendorf,* 67 Colo. 40, 185 Pac. 470. Defendants' evidence herein does not support a concurrent or joint possession, which is not permissible. It would be a harsh and unreasonable construction of the statute to say that the automobile must be kept completely away from and out of the hands of the vendor. This principle seems to be supported by one of our early cases, *Cook v. Mann,* 6 Colo. 21.

■ ■ On defendants' claim that the verdict was excessive, there was a clear conflict in the evidence concerning the value of the car; however, this was a question of fact for the jury and its determination will not be disturbed. There is ample evidence in the record to support the jury's finding that the transaction was a sale accompanied by immediate delivery, and followed by actual and continued change of possession. The jury was properly instructed on these questions and the judgment based upon its verdict should be upheld.

Accordingly, the judgment is affirmed.